## IN THE FEDERAL DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **BORINKEN TOWING & SALVAGE, LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ISLAND COMMODITY BROKERS, LLC; GARY DE LAURENTIIS; BRIAN M. CHRISMAN; DIANA CHRISMAN; MICHAEL WEINGART; INSURANCE COMPANIES A, B and C; JOHN DOE 1, 2 and 3,**<br><br>**Defendants.** | CIVIL NO. 14-<br><br>PLAINTIFF DEMANDS TRIAL BY JURY |

## COMPLAINT

TO THE HONORABLE DISTRICT COURT:

COMES NOW Plaintiff, Borinken Towing & Salvage, LLC, through its undersigned legal representation, and respectfully states and prays as follows:

### Jurisdiction and Venue

1.    The contract giving rise to the claims set forth in this action was executed in the District of Puerto Rico and the Commonwealth of Puerto Rico.

2.    Federal jurisdiction in this case is attained under diversity pursuant to section 1332 of Title 28, United States Code. Venue is appropriate in this judicial district pursuant to section 1391(b) of Title 28, United States Code.

3.    The matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

**Parties**

4.      Plaintiff, Borinken Towing and Salvage, LLC (hereinafter, "BTS") is a Limited Liability Company dedicated to the provision of salvage operations and tugboat and barge marine services in the Caribbean and Eastern Atlantic regions through its marine vessel fleet, with principal offices located in Cayey, Puerto Rico.

5.      Codefendant, Island Commodity Brokers, LLC (hereinafter, "ICB") is a Limited Liability Company dedicated to the brokerage of scrap metal and/or other bulk cargo, organized under the laws of the state of Delaware, which has its main offices in Dover, Delaware.

6.      Codefendant, Mr. Gary De Laurentiis (hereinafter, "Mr. De Laurentiis") is the principal officer and key decision maker at ICB, who conspired with other individuals to defraud BTS and is personally liable to Plaintiff.   Codefendant Mr. De Laurentiis is domiciled in Oakdale, California.

7.      Codefendant Mr. Brian Chrisman (hereinafter, "Mr. Chrisman") is a  decision maker at ICB, who conspired with Mr. De Laurentiis, ICB and others to defraud BTS, and is thus personally liable for the damages claimed herein.   Mr. Chrisman is domiciled in Oakdale, California.

8.      Codefendant Mrs. Diana Chrisman ("Mrs. Chrisman"), upon information and belief, is related to Mr.  Chrisman.  Mrs. Chrisman participated in the scheme to defraud BTS and is thus personally liable to Plaintiff for the damages claimed herein.  Mrs. Chrisman is domiciled in Bloomingdale, Illinois.

9.      Codefendant Mr. Michael Weingart (hereinafter, "Mr. Weingart") is the person who initially communicated with BTS on behalf of ICB in order to establish a business relationship.   Mr. Weingart conspired with Mr. De Laurentiis, ICB and others to defraud

2

Plaintiff, and is thus personally liable for the damages claimed herein. By information and belief Mr. Weingart is not a resident of the Commonwealth of Puerto Rico.

10.    John Doe 1, 2 and 3 are defendants whose names are unknown, who are shareholders, directors, managers and/or individuals that collaborated with codefendants Mr. De Laurentiis, Mr. Chrisman, Mrs. Chrisman and Mr. Weingart to defraud Plaintiff through willful and negligent actions or omissions which caused or contributed to the damages claimed herein.

11.    Insurance Companies A, B, C and D are insurers whose identities are presently unknown, which insured the aforementioned codefendants and are jointly and severally responsible with their respective insured for the damages claimed herein.

### Factual Allegations

12.    On or around November 27, 2013, an email communication was received by BTS' president, Capt. Rubén Iglesias, from codefendant Mr. Weingart, requesting tugboat and barge services with capacity to transport 5,000 ton loads of scrap metal from Tortola, B.V.I. to Ponce, Puerto Rico.

13.    On December 6, 2013, codefendant ICB and BTS executed a Time Charter Agreement, (hereinafter, "the Agreement"), for the marine transportation of scrap metal material belonging to ICB. Under the Agreement BTS would provide tugboat and barge equipment and the corresponding marine crew to ICB for a minimum period of thirty (30) days, at a daily cost to ICB of $5,800.00. Additionally, the parties agreed ICB would be responsible for the tugboat's fuel consumption during the term of the Agreement.

14.    Also, per the terms of the Agreement, any claim related to the contractual terms of the Agreement would be filed before the Federal District Court for the District of Puerto Rico.

15.     Although Mr. Weingart established initial communication with BTS, codefendant Mr. Chrisman was the person in charge of negotiating the terms of the Agreement on behalf of ICB.  During said negotiations Capt. Ruben Iglesias initially required BTS' customary terms of payment, upfront full payment for the 30 day time charter.  Mr. Chrisman submitted a written counteroffer proposing a payment schedule instead.

16.     BTS accepted Mr. Chrisman's proposed payment schedule which was included in the Agreement. However, for the execution of the Agreement to take place, and for BTS to begin the operation of the time charter, ICB was required to pay BTS an upfront deposit of $50,000.00. The Agreement required ICB to issue three subsequent payments on the following dates: December 16, 2013, December 23, 2013 and December 30, 2013.  The amounts of each of the three scheduled payments ranged between a minimum of $50,000.00 and a maximum of $75,000.00, depending on the purchase and cost of the fuel consumed by the tugboat.

17.     On December 6, 2013, Mr. Chrisman deposited the agreed $50,000.00 in BTS's bank account from a personal bank account belonging to Mrs. Diana Chrisman, who is presumably Mr. Chrisman's relative.  Additionally, Mr. Chrisman expressed on an email to BTS management that said initial payment came from his personal funds.  On December 7, 2013, a copy of the Agreement signed by a Mr. Richard Smith on behalf of ICB was presented to BTS via email by Mr. Chrisman.

18.     As agreed, on December 6, 2013, BTS' tug Grapetree Bay and its barge, Caribbean Provider, departed from Ponce to Tortola, B.V.I., where the bulk scrap metal ICB was to load and transport was located.

19.     On December 10, 2013, the Grapetree Bay and the Caribbean Provider arrived to Tortola, B.V.I, where ICB's scrap metal was loaded by third party stevedoring personnel.

20.     On December 17, 2013, the BTS vessels departed Tortola and delivered ICB's bulk at its final destination in Ponce, Puerto Rico, on December 18, 2013.    Mr. Chrisman traveled to Tortola to verify the loading of the scrap material and later the unloading in Puerto Rico.

21.     On December 19, 2013, the Grapetree Bay and the Caribbean Provider again departed from Ponce, Puerto Rico, to Tortola in order to return part of  ICB's cargo which had not been accepted by its client, Schnitzer Steel Industries, Inc. (hereinafter, "Schnitzer"), as it did not meet said client's quality standards.

22.     Meanwhile, ICB had failed to issue the second scheduled payment of $50,000.00, which was due on December 16, 2013 pursuant to the terms of the Agreement. This situation forced BTS president, Captain Rubén Iglesias, to demand from Mr. De Laurentiis and Mr. Chrisman, through multiple telephone and electronic mail communications, strict compliance with the contractually established payment schedule and immediate payment of all owed amounts due.

23.      Mr. De Laurentiis, responded to Capt. Iglesias' payment demands with pretexts and false representations to justify their breach of contract, specifically stating during a telephone conversation held on December 20, 2013 that the end-client for the transported cargo, Schnitzer, a metal recycling company, had failed to issue payment to ICB for the delivered scrap metal, and therefore ICB was unable to issue any payments to BTS.

24.     Due to the pretexts expressed by Mr. De Laurentiis to justify breaching the terms of the Agreement, Capt. Rubén Iglesias emphatically stated in email and telephone communications that BTS executed the Agreement with ICB and not with Schnitzer and that payment to BTS was not subjected to Schnitzer's payment to ICB.

25.     Importantly, Capt. Iglesias verified Mr. De Laurentiis' representations with Schnitzer's management and discovered that by December 20, 2013 ICB had received payment from Schnitzer for the delivered and accepted bulk material.

26.     During a telephone conversation held on December 21, 2013, while BTS's charted vessels were heading from Tortola back to Ponce, Puerto Rico, Mr. De Laurentiis was confronted by Capt. Iglesias regarding the former's false representations regarding Schnitzer's failure to pay.  Mr. De Laurentiis replied with a new pretext to justify the breach of contract, now alleging part of the scrap metal transported on the first trip was not accepted by the end-user, but promising payment of the second and third payments which were due on December 16th and 23rd, 2013, respectively.

27.     On December 26, 2013, the Caribbean Provider barge completed the unloading of the cargo that had been rejected by ICB's client, Schnitzer, back in Tortola where it had to be returned.  At that point BTS had concluded its end of the Agreement.  Nonetheless, Plaintiff BTS never received payment from ICB or Mr. De Laurentiis, Mr. Chrisman or Mr. Weingart, even though in a telephone conversation held on or about December 26, 2013, Mr. De Laurentiis again pledged to Capt. Iglesias that full payment under the terms of the Agreement would be forthcoming..

28.     During a December 30, 2013 telephone conversation between Mr. De Laurentiis and Capt. Iglesias regarding the nonpayment of the owed funds, Mr. De Laurentiis offered to settle ICB's debt with BTS through a single payment of $40,000.00.  Capt. Iglesias turned down the $40,000.00 settlement offer and alternatively suggested a payment plan for the full amount of $152,560.75 owed to BTS.  However, that was the last communication between Mr. Iglesias and Mr. De Laurentiis and no payment has been received by Plaintiff to fulfill ICB's contractual debt.

29.     On January 2, 2014, BTS through its Legal Division Officer, Mr. Jan Benvenutti, sent a collection letter to ICB via email directed to Mr. De Laurentiis and Mr. Chrisman, conferring five days for payment of the entire amount owed under the Agreement to avoid a collection lawsuit.  However, no reply or payment was received from either Mr. De Laurentiis, Mr. Chrisman, or from any other ICB officer.

30.     As of February 19, 2014, ICB owes BTS the amount of $152,560.75 for the time charter of a minimum of 30 days and consumed fuel, pursuant to the terms of the Agreement.

31.     Defendants also failed to pay the contractually agreed cost for the cleaning of the barge Caribbean Provider, which amounted to $4,500.00 and was paid by Plaintiff BTS.

**First Claim (Breach of Contract)**

32.     Paragraphs 1 through 31 of the Complaint are incorporated by reference as if fully set forth herein.

33.     Plaintiff has fulfilled all of its obligations under the Time Charter Agreement.

34.     Defendant Island Commodity Brokers, LLC breached the Time Charter Agreement by failing and refusing to pay Plaintiff in full for labor, services and resources provided by BTS for the marine transportation of ICB's bulk material pursuant to the Time Charter Agreement.

35.     Plaintiff has demanded from Defendant ICB specific fulfillment of its contractual obligation on multiple occasions, however, Defendant ICB has not fulfilled said demands.

**Second Claim (Fraud)**

Paragraphs 1 through 35 of the Complaint are incorporated by reference as if fully set forth herein.

36.     Plaintiff provided valuable equipment, resources, labor that were necessary for codefendants ICB, Mr. De Laurentiis, Mr. Chrisman, Mrs. Chrisman, Mr. Weingart and others, to perform its scrap metal brokerage business and complete its obligations to third parties, specifically to deliver bulk quantities of scrap metal to its clients.

37.     Codefendants Mr. Weingart, Mr. De Laurentiis, Mr. Chrisman, Mrs. Chrisman and other unknown individuals acting under the protection of Island Commodity Brokers, LLC, willfully and jointly conspired and induced BTS management to establish a payment schedule with the premeditated objective to obtain benefit from Plaintiff's marine transportation services, using its labor, skill, experience, resources and the equipment referred to herein, to transport scrap metal between Tortola, B.V.I. and Ponce, Puerto Rico, for which the codefendants received economic benefit from its client, knowing that after the initial payment issued to BTS they would intentionally never meet their contractually agreed scheduled payments of December 16th, 23rd and 30th, 2013.   It should be noted that BTS's management justifiably relied upon Mr. De Laurentiis's and Mr. Chrisman's representations based on the initial payment of $50,000.00 received on December 6, 2013 for the commencement of the time charter.

38.     Upon information and belief, ICB is a new company established in October 2013, which has no capital, assets or funds to pay for the services rendered by BTS.   The illicit scheme carried out by codefendants through the shield provided by a limited liability company is contrary to the public policy that justifies the principle of limited liability and the protection it affords to individuals who are members of a limited liability company such as ICB.   Therefore, codefendants Mr. Weingart, Mr. De Laurentiis, Mr. Chrisman, Mrs. Chrisman and other unknown parties who benefited and had partaken in the fraudulent scheme, are joint and severally personally liable to BTS for the moneys owed by ICB.

39.     Furthermore, the actions of individual codefendants in their business dealings with BTS during a one month period reveal the inadequate separation between the personal and corporate entities; specifically by issuing $50,000.00 payment of December 6, 2013 from Chrisman's personal bank account, instead of an ICB account and by proposing a settlement of $40,000.00 with Mr. De Laurentiis' personal funds.  Such inadequate separation of personal and company entities warrants piercing the company veil provided by ICB, LLC.

40.     Codefendants Mr. Weingart, Mr. De Laurentiis, Mr. Chrisman, Mrs. Chrisman and the unknown ICB company officers, directors, executives and employees who participated in the referred to fraudulent scheme should be declared by this Honorable Court jointly and severally responsible to Plaintiff, Borinken Towing and Salvage, LLC, in their respective personal capacity, as allowed by the alter ego piercing theories to which LLC members are subject to under Puerto Rico corporate and case law, in order to avoid a manifest injustice.

41.     In summary, Mr. Weingart, Mr. De Laurentiis, Mr. Chrisman, Mrs. Chrisman and other unknown ICB owners, used ICB's corporate veil to avoid personal responsibility in the breach of legal obligations under the Agreement and to commit fraudulent conduct prejudicial to BTS as described above.  Therefore, it is respectfully requested that this Honorable Court pierce the company veil provided by the business-entity, Island Commodity Brokers, LLC, and consequently impose personal responsibility upon codefendants Mr. Weingart, Mr. De Laurentiis, Mr. Chrisman and Mrs. Chrisman, to avoid the inequitable result of such codefendants' scheme to defraud Plaintiff.

### Third Claim (Direct Action against Insurers)

42.     Paragraphs 1 through 42 of the Complaint are incorporated by reference as if fully set forth herein.

43.     Defendants Unknown Insurance Companies A through D have a contractual obligation to compensate those who are damaged by the actions, errors  and omissions of codefendants Island Commodity Brokers, LLC, Mr. Richard Smith, Mr. Chris Smith, Mr. Michael Weingart, Mr. Gary De Laurentiis, Mr. Brian Chrisman, Mrs. Chrisman and John Doe Defendants 1, 2 and 3.  As set forth above, above, codefendants committed willful and negligent actions directed to defraud Plaintiff.  Moreover, there is a clear and direct causal link between their misconduct and the damages sustained by Plaintiff, as set forth above.

44.     Under 26 L.P.R.A. § 2003, Plaintiff has a right to reclaim directly against the corresponding insurers of codefendants Island Commodity Brokers, LLC, Mr. Richard Smith, Mr. Chris Smith, Mr. Michael Weingart, Mr. Gary De Laurentiis, Mr. Brian Chrisman, Mrs. Chrisman and John Doe Defendants 1, 2 and 3.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter final judgment against codefendants:

1.     Declaring codefendants to be liable to Plaintiff for the payment of  $152,560.75, plus legal interests, pursuant to the Time Charter Agreement;

2.     Declaring codefendants to be liable to Plaintiff for the payment of expenses in excess of $4,500.00 for the cleaning of BTS equipment;

3.     Reasonable attorney's fees;

4.     Such other and further relief at law or in equity as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury of all issues triable of right by a jury in the complaint set forth above.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 20th day of February, 2014.

s/ _Hatuey Infante_

HATUEY INFANTE CASTELLANOS
USDC-PR 225713
**HATUEY INFANTE LAW OFFICES, P.S.C.**
Attorneys for Plaintiff
P.O. Box 12014
San Juan, PR 00914
Tel: (787) 399-2238
Fax:(787) 641-5016
hatueyinfante@gmail.com